# THE DISTRICT COURT OF GUAM

SUMMER VISTA II DE, LLC and SUMMER VISTA III DE, LLC,

Plaintiffs,

vs.

JOHN J. RIVERA, NATHANEAL P. SANCHEZ; ANISIA S. DELIA, EMILIA F. RICE, VICTOR R. TORRES, and KARL E. CORPUS, in their official capacities as Members of the Guam Housing Urban and Renewal Authority Board of Commissioners; and ELIZABETH F. NAPOLI, in her official capacity as Executive Director of the Guam Housing and Urban Renewal Authority; and DOES 1-10, INCLUSIVE,

Defendants,

FLORES ROSA GARENS, L.L.C.

Intervenor.

CIVIL CASE NO. 25-00040

**ORDER**
**GRANTING MOTION TO DISMISS**

## I. INTRODUCTION[1]

The heart of this dispute arises from the Guam Housing and Urban Renewal Authority's

[1] The court refers to CM/ECF pagination throughout this Decision and Order.

plan to reserve $1,793,120 in tax credits for developer Flores Rosa in its 2025 Qualified Allocation Plan. *See* ECF No. 2, at 8-11. Initially, Guam Housing and Urban Renewal Authority had awarded the $1,793,120 in tax credits to Flores Rosa as a part of its 2024 Qualified Allocation Plan, but Guam Housing and Urban Renewal Authority did not execute the Carryover Allocation Agreement in accordance with 26 U.S.C. § 42(h)(1)(C). *See id.* at 6-7. As a result, Plaintiffs, who are rival developers, filed three administrative protests and an appeal to the Office of Public Accountability to contest the allocation of tax credits in the 2024 Qualified Allocation Plan. *Id.* The parties then agreed to consolidate their claims in the Superior Court of Guam before eventually reaching a settlement agreement on September 19, 2025, where Guam Housing and Urban Renewal Authority agreed to withdraw the allocation of Flores Rosa's tax credits from the 2024 Qualified Allocation Plan. *Id.* at 7.

On September 30, 2025, Guam Housing and Urban Renewal Authority held a board meeting where a proposed 2025 Qualified Allocation Plan was introduced which allocated $1,793,120 in tax credits to Flores Rosa in direct violation of the September settlement agreement. *Id.* at 8-9. On October 20, 2025, Plaintiffs filed this Complaint and a Motion for Temporary Restraining Order and Preliminary Injunction seeking to enjoin Guam Housing and Urban Renewal Authority from executing or otherwise adopting the proposed 2025 Qualified Allocation Plan at a hearing to be held the next day, October 21, 2025, at 12:00 p.m. *Id.* at 10. Plaintiffs pleaded two claims in the Complaint: 1. Injunctive Relief for a violation of 26 U.S.C. § 42(m) "[p]ursuant to 42 U.S.C. § 1983," and 2. Declaratory Relief for a violation of 26 U.S.C. § 42(m) pursuant to 28 U.S.C. §§ 2201-2202. *Id.* at 11-14. The court held a hearing on the Motion for Temporary Restraining Order and Preliminary Injunction on October 21, 2025, and issued its order denying the motion that same day noting that it was "not authorized to create a private cause of action." ECF Nos. 23 & 24.

Now before the court is Flores Rosa's Motion to Dismiss the Complaint.[2] ECF No. 36.

## II. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The court must dismiss a complaint if the pleader fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6); *see also Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) ("Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."). Dismissal of a lawsuit is required even where a federal question exists, if no express or implied private cause of action is available. *Guinto v. Marcos*, 654 F.Supp. 276, 278 (S.D. Cal. 1986).

## III. DISCUSSION

Flores Rosa argues Plaintiffs failed to establish that 26 U.S.C. § 42(m) creates a private right of action for prospective developers like Plaintiffs. Flores Rosa further argues that the Plaintiffs' two claims alleged in their Complaint seeking injunctive and declaratory relief must be dismissed with prejudice for failure to state a claim under 42 U.S.C. § 1983, or 28 U.S.C. § 2201-2202. ECF No. 36, at 10.

Plaintiffs alternatively assert that they may bring their claims pursuant to the *Ex parte Young* doctrine regardless of whether they have a private right of action. ECF No. 40, at 8-9. They state that "there is no need to address, or for this Court to consider," Flores Rosa's arguments about express or implied statutory causes of action stemming from 26 U.S.C. § 42(m), because they are bringing their claims in equity. *See id.*

[2] Defendants John J. Rivera, Nathanael P. Sanchez, Anisia S. Delia, Emilia F. Rice, Victor R. Torres, Karl E. Corpus, and Elizabeth F. Napoli, in their official capacities, filed a motion to join Intervenor's Motion to Dismiss. ECF No. 37. The court need not address Defendant Governor Lourdes A. Leon Guerrero's Motion to Dismiss because the parties stipulated to dismissing all claims against the Governor. ECF No. 45.

Flores Rosa counters that the *Ex parte Young* doctrine is inapplicable because 26 U.S.C. § 42 already has a "detailed and robust administrative scheme" and Congress demonstrated an intent "to foreclose any role of the Courts to equitably enforce the [Low-Income Housing Tax Credit] Law." ECF No. 42, at 12-13.

To resolve the motion to dismiss, the court must first consider whether Plaintiffs have alleged a valid private cause of action under 26 U.S.C. § 42(m). Next, the court must determine whether the two claims stated in the Complaint: Claim One for Injunctive Relief brought pursuant to 42 U.S.C. § 1983 and Claim Two for Declaratory Relief brought pursuant to 28 U.S.C. §§ 2201-2202 can be ordered independently without a statutory cause of action. *See* ECF No. 2, at 11-14. Assuming this court finds there is no statutory private cause of action under 26 U.S.C. § 42(m) and no independent basis to provide the relief sought, the court will next consider whether Plaintiffs can bring the two claims pursuant to the *Ex parte Young* doctrine.

**A. FLORES ROSA AND PLAINTIFFS' ARGUMENTS**

Plaintiffs are seeking injunctive and declaratory relief for an alleged violation of the Responsibilities of Housing Credit Agencies provision in the Low-Income Housing Tax Credit program. 26 U.S.C. § 42(m). Flores Rosa argues Plaintiffs are not entitled to injunctive or declaratory relief because they have not stated a valid, private cause of action under 26 U.S.C. § 42(m). ECF No. 36, at 11. In particular, § 42(m) does not provide an express or implied private cause of action, according to Flores Rosa. They argue that the language of the statute reveals no express private enforcement provision or any rights-creating language. *Id.* at 11-19. Rather, the statutory language primarily regulates housing credit agencies and does not confer "… any enforceable right in favor of prospective applicants, developers, tenants or other private parties." *Id.* at 11. Flores Rosa next applied the four-factor test found in *Cort v. Ash*, 422 U.S. 66, 78 (1975) and concluded that the Plaintiffs have also failed to demonstrate that an implied private

right of action exists under this test. Because no private cause of action exists, Flores Rosa contends that the Plaintiffs are unable to pursue the two claims independently. ECF 36 at 4-5

In their opposition to the motion to dismiss, Plaintiffs argue that they are entitled to pursue their claims under the doctrine of *Ex Parte Young*. ECF No. 40, at 8-22. They further propound that the court may also look to the thirty-one-year-old Southern District of Indiana case, *De Harder Inv. Corp. v. Indiana Hous. Fin. Auth.*, 909 F.Supp. 601 (S.D. Ind. 1995), which they believe stands for the proposition that a private right of action exists. *Id.* at 22-24.

Flores Rosa, in their reply, contend that the *Ex Parte Young* doctrine has been narrowly construed by the Ninth Circuit and now "Congress may enact statutes with a detailed remedial scheme that explicitly or implicitly displaces the judge-made equitable remedy available under *Ex parte Young.* In such cases, a plaintiff must rely on a statutory cause of action in order to bring suit." ECF No. 42, at 7 (citing *Moore v. Urquhart*, 899 F.3d 1094, 1103 (9th Cir. 2018) (in turn, citing *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 75-76 (1996)).

## IV. LEGAL ANALYSIS

### A. 26 U.S.C. § 42(m) DOES NOT CREATE A PRIVATE CAUSE OF ACTION FOR DEVLOPERS

The threshold question before the court is whether Congress intended to create a private cause of action for developers to enforce the Responsibilities of Housing Credit Agencies provision in the federal courts.

In determining whether a private cause of action exists in a statute, the United States Supreme Court has instructed lower courts to determine if "Congress *intended to create a federal right*." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002) (emphasis in original) ("For a statute to create private rights, its text must be phrased in terms of the persons benefitted."). Historically, courts have relied on the following four factors spelled out by the Supreme Court in *Cort v. Ash*

to decide whether Congress created an implied cause of action: (1) whether the plaintiff is "one of the class for whose especial benefit the statute was enacted"; (2) whether there is "any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one"; (3) whether the cause of action is "consistent with the underlying purposes of the legislative scheme"; and (4) whether the cause of action is "one traditionally relegated to state law ... so that it would be inappropriate to infer a cause of action based solely on federal law." *Cort v. Ash*, 422 U.S. 66, 78 (1975). Intervenor Flores Rosa went through the four-factor test quite extensively in its motion papers. *See* ECF No. 36, at 12-17.

While the Ninth Circuit continues to use the *Cort v. Ash* factors for guidance in its analysis, "the Supreme Court essentially collapsed the *Cort* test into a single focus: '[t]he central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action.'" *Logan v. U.S. Bank Nat. Ass'n*, 722 F.3d 1163, 1169 (9th Cir. 2013) (quoting *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575 (1979)). Courts must analyze the text and structure of the statute to answer whether Congress intended to create an express or implied cause of action. *Gonzaga Univ.*, 536 U.S. at 274; *see also Touche Ross & Co.*, at 568 ("[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person.").

**1. NO EXPRESS PRIVATE CAUSE OF ACTION EXISTS**

A close review of the text and structure of the Responsibilities of Housing Credit Agencies provision, 26 U.S.C. § 42(m), reveals that Congress did not choose to expressly or impliedly create a private, federal right for developers to bring a lawsuit in order to enforce the statute.

Title 26 United States Code Section 42(m) does not contain an express private right of enforcement for developers or litigants anywhere in its text. The Responsibilities of Housing

Credit Agencies provision requires housing credit agencies to allocate tax credits for the Low-Income Housing Tax Credit program in accordance with a Qualified Allocation Plan. *See* 26 U.S.C. § 42(m)(1)(A). This provision then defines what a Qualified Allocation Plan is and outlines the selection criteria for Qualified Allocation Plans. *See* 26 U.S.C. § 42(m)(1)(B)-(C). Congress then chose to identify feasibility requirements. *See* 26 U.S.C. § 42(m)(2). None of the requirements of the Responsibilities of Housing Credit Agencies provision, as identified above, confer a private right of action to any member of the public, let alone private developers. Accordingly, Congress did not create an express cause of action for developers to enforce this provision.

**2. NO IMPLIED PRIVATE CAUSE OF ACTION EXISTS**

Congress also did not demonstrate an implied intent to create a cause of action anywhere in the text or structure of 26 U.S.C. § 42(m). As noted in *Logan*, the test for whether there is a private cause of action "remains whether Congress intended to create, either expressly or by implication, a private cause of action." 722 F.3d at 1169. And the court must analyze the text and structure of the statute to determine where there is an implied private cause of action. *Gonzaga Univ.*, 536 U.S. at 274. Importantly, the text and structure of 26 U.S.C. § 42(m) does not convey any implied rights to developers. *See id.* at 287 (holding the Family Educational Rights and Privacy Act's nondisclosure provisions did not "confer enforceable rights" as its terms did not have rights-creating language).

As highlighted above, this provision regulates housing credit agencies. *See generally* 26 U.S.C. § 42(m) (outlining the responsibilities of housing credit agencies in granting tax credits for the Low-Income Housing Tax Credit program). This provision regulating housing credit agencies through its structure does not create new rights in its text for developers or anyone else, and therefore cannot be read to create an implied, private enforceable right. *See Alexander v.*

*Sandoval*, 532 U.S. 275, 289 (2001) ("Statutes that focus on the person regulated rather than the individuals protected create no implication of an intent to confer rights on a particular class of persons.") (internal citations and quotation marks omitted); *Gonzaga Univ.*, 536 U.S. at 290 ("In sum, if Congress wishes to create new rights enforceable under § 1983, it must do so in clear and unambiguous terms—no less and no more than what is required for Congress to create new rights enforceable under an implied private right of action."); *see also Transamerica Mortg. Advisors, Inc. (TAMA), et al., v. Lewis*, 444 U.S. 11, 24 (1979) ("The dispositive question remains whether Congress *intended* to create any such remedy.") (emphasis added). In sum, because of the text and structure in 26 U.S.C. § 42(m), it is clear that Congress did not intend to create an implied, private cause of action for developers to enforce this provision.

Plaintiffs, however, argue the court should focus its analysis on *DeHarder Inv. Corp. v. Indiana Hous. Fin. Auth.*, where the Southern District of Indiana noted "[i]f § 42(m) creates any enforceable right, it is the right to insist that the [state housing credit agency] create a qualified allocation plan which contains the listed criteria." 909 F.Supp. 606, 616 (S.D. Ind. 1995). However, the *DeHarder* court actually held that 26 U.S.C. § 42(m) did not create a privately enforceable right and determined that the plaintiffs had failed to state a claim upon which relief could be granted. *See id.* at 614-16 ("[W]e find that § 42 does not create enforceable rights under § 1983[.]"). Moreover, other district courts who have also analyzed 26 U.S.C. § 42 generally have reached the same conclusion. *See e.g.*, *Mendoza v. Frenchman Hill Apartments Ltd. P'ship*, No. 03-494, 2005 WL 6581642, at *5-7 (E.D. Wash. Jan. 20, 2005) (finding 26 U.S.C. § 42 did not create an "individual enforceable right"); *Kozich v. Deibert*, No. 15-61386-CIV, 2015 WL 12533077, at *3 (S.D. Fla Oct. 20, 2015) ("Kozich does not assert a viable federal claim for relief based on a claimed violation of 26 U.S.C. § 42."); *Canton Club E. Partners Ltd. Divided Hous. Ass'n Ltd. P'ship v. Michigan State Hous. Dev. Auth.*, No. 1:15-CV-505, 2015 WL

7783590, at *2-3 (W.D. Mich. Dec. 3, 2015) (concluding the text and structure of 26 U.S.C. § 42 did not indicate a congressional intent to create enforceable rights). Accordingly, the court holds that 26 U.S.C. § 42(m) does not provide developers, such as Plaintiffs, with a private cause of action.[3]

### 3. DECLARATORY AND INJUNCTIVE CLAIMS DO NOT INDEPENDENTLY PROVIDE A CAUSE OF ACTION

The court must also separately decide whether Plaintiffs can bring their injunctive and declaratory relief claims under 28 U.S.C. Sections 1983 and 2201-2202 independently for violations of 26 U.S.C. § 42(m). The problem that Plaintiffs face is that these two statutory sections presuppose that a plaintiff has already alleged a private cause of action from a separate statute. Section 1983 "generally supplies a remedy" to plaintiffs seeking injunctive relief but only if they "demonstrate[] that a statute confers an individual right." *Gonzaga Univ.*, 536 U.S. at 284. Likewise, Sections 2201 and 2202 do not independently provide a private cause of action. *City of Reno v. Netflix, Inc.*, 52 F.4th 874, 879 (9th Cir. 2022) ("The Declaratory Judgment Act does not provide a cause of action when a party … lacks a cause of action under a separate statute and seeks to use the Act to obtain affirmative relief."). As discussed earlier in the decision, the separate statutory section 26 U.S.C. § 42(m) does not provide Plaintiffs a private cause of action, and because of this, the court finds that Plaintiffs are unable to pursue the two claims independently.

## B. PLAINTIFFS ARE NOT ENTITLED TO EQUITABLE RELIEF UNDER THE *EX PARTE YOUNG* DOCTRINE

Plaintiffs contend that they qualify for an equitable cause of action under the *Ex parte Young* doctrine even if they do not have a private, statutory cause of action.

---

[3] Plaintiffs rely on dicta from *DeHarder*, a case from the Southern District of Indiana in the Seventh Circuit, which is not controlling. Moreover, *DeHarder* was issued a year before *Seminole Tribe of Florida* and twenty years before *Armstrong*, cases foreclosing equitable remedies where Congress provided detailed remedial schemes.

The *Ex parte Young* doctrine carves out a narrow exception to state sovereign immunity. *See State ex rel. Bonta v. Del Rosa*, 158 F.4th 1066, 1076 (9th Cir. 2025). This "judge-made remedy" gives parties "[t]he ability to sue to enjoin unconstitutional actions by state and federal officers." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015). To invoke the *Ex parte Young* doctrine, a party must allege "an ongoing violation of federal law and seek[] relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 636 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296, 296 (1997) (O'Connor, J., concurring in part and concurring in judgment)).

Courts acting in equity under this doctrine are "subject to express and implied statutory limitations" and "can no more disregard statutory and constitutional requirements and provisions than can courts of law." *Armstrong*, 575 U.S. at 327. For example, "Congress may enact statutes with a detailed remedial scheme that explicitly or implicitly displaces the judge-made equitable remedy available under *Ex parte Young*." *Moore v. Urquhart*, 899 F.3d 1094, 1103 (9th Cir. 2018). Under such circumstances, plaintiffs "must rely on a statutory cause of action in order to bring suit." *Id.* (citing *Armstrong*, 575 U.S. at 329-30; *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 75-76 (1996)). Furthermore, claims brought pursuant to the *Ex Parte Young* doctrine must "promote the vindication of federal rights." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 105 (1984).

Although Plaintiffs are correct to state that they do not need a statutory cause of action if they are proceeding under the *Ex parte Young* doctrine, Plaintiffs, however, cannot ignore specific language in congressional statutes. Congress can still choose to foreclose equitable relief in a statute through a detailed remedial scheme. *See Urquhart*, 899 F.3d at 1103. Upon review of 26 U.S.C. § 42(m) Congress has done just that. Guam Housing and Urban Renewal Authority and the Internal Revenue Service are mandated to work together to enforce the Low-Income

Housing Tax Credit. It has developed a robust remedial scheme for enforcing its tax laws under the Internal Revenue Code. *See Mendoza*, 2005 WL 6581642, at *6 (detailing how the state housing credit agency "acts as a watchdog for the IRS" who then "has ample auditing power to strip undeserving developments of their tax credits or prosecute wayward taxpayers."); *see also Adams v. Johnson*, 355 F.3d 1179 (9th Cir. 2004) ("There are few statutory schemes more complex, comprehensive, or subject to greater congressional scrutiny than the Internal Revenue Code, a principle well known to any who have ever prepared their own tax return."). Title 26 United States Code Section 42(m)(1)(B)(iii) requires qualified allocation plans to "provide[] a procedure that the agency … will follow in monitoring for noncompliance with provisions of this section and in notifying the Internal Revenue Service of such noncompliance[.]" 26 U.S.C. § 42(m)(1)(B)(iii). Title 26 United States Code Section 42(n) further requires the Secretary of the Treasury to "prescribe such regulations as may be necessary or appropriate to carry out the purposes of this section, including regulations … (3) preventing the avoidance of the rules of this section[.]" 26 U.S.C. § 42(n). The Secretary has prescribed such regulations. For example, 26 C.F.R. § 1.42-5 outlines compliance monitoring requirements for the qualified allocation plans, recordkeeping and record retention provisions, and certification and review provisions among other responsibilities while incorporating oversight from the Internal Revenue Service. *See* 26 C.F.R. § 1.42-5. Congress has provided for a detailed and robust remedial scheme to enforce the Internal Revenue Code. As a result, this scheme forecloses equitable relief under the *Ex parte Young* doctrine.

## V. <u>CONCLUSION</u>

Based on the above, the court finds that 26 U.S.C. § 42(m) creates neither an express nor implied private cause of action for developers. The court further finds that Plaintiffs are not entitled to equitable relief under the *Ex Parte Young* doctrine because Congress has provided a

detailed remedial scheme to foreclose equitable relief. Therefore, the court dismisses the Complaint with prejudice for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

**SO ORDERED.**

**/s/ Frances M. Tydingco-Gatewood**
**Chief Judge**
**Dated: Sep 04, 2026**